No. 12          January 23, 2013          85

IN THE OREGON TAX COURT
REGULAR DIVISION

DESCHUTES LANDING LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant*,
*and*

DESCHUTES COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 4995)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the real market value of lots in Deschutes County. Defendant-Intervenor (the county) criticized taxpayer's expert at trial, arguing that taxpayer's appraiser made no adjustment to sales data on what taxpayer asserted were comparable improved properties in order to adjust for the difference in market conditions as of the date of those sales and the assessment date, and that taxpayer's appraiser made no adjustment to historic prices paid by a developer for a lot, though the sale of the package of lot and improvement occurred only after a passage of substantial time from the point when the bare lot was purchased. The court found that taxpayer had not met its burden of proof and that the real market value of the property in question was as assessed by the county.

Trial was held September 6, 2011, in the courtroom of the Oregon Tax Court, Salem.

Christopher K. Robinson, Attorney at Law, Lake Oswego, argued the cause for Plaintiff (taxpayer).

Laurie E. Craghead, Deschutes County Counsel, Bend, argued the cause for Defendant-Intervenor (the county).

Decision for the county rendered January 23, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This case involves a dispute about the real market value, as of January 1, 2008, of unimproved lots located in the city of Bend in Deschutes County and within a development known as Deschutes Landing (the development). Plaintiff has withdrawn any challenge to the values for

improved lots located within the development. A trial was held in this matter, following which the parties submitted post-trial briefs and a transcript of the proceedings at trial.

## II.   FACTS

The historic or basic facts in this case are not subject to any material dispute. Basic facts regarding the development are as stated in the Decision of the magistrate who heard this matter and may be found there. *Deschutes Landing LLC v. Deschutes County Assessor*, TC-MD No 090599C (Jan 13, 2011). An overriding fact, as to which the parties agree, is important to restate here. The development was designed and is to be built as a vertical build project in which lots are not sold separately from the improvements made upon them. The parties conclude that the highest and best use of the property is that use. Accordingly, the problem in this case is to determine what the value of an unimproved lot would have been, even though no sales of unimproved lots are made in developments of this type. The appraisers for the parties are in agreement that the method for doing that is to look at market evidence to determine the value of improved lots where the lot/improvement package is comparable to the subject property and then develop, again from market evidence, an indication of what portion of the "package" value is attributable to the lot alone—this being referred to as the lot/cost ratio. The lot value is then derived by multiplying the package value conclusion by the lot/cost ratio.

One other fact about which the parties do not appear to be in disagreement and which the court finds to be true, is that the real estate market in the Bend area, both in general and as to the type of property included in the development, began a serious decline during 2007, a decline that continued throughout 2008.

Plaintiff (taxpayer) retained an expert appraiser to prepare and present to the court an appraisal report and conclusions as to the values of the properties in question as of January 1, 2008 (the January appraisal). Taxpayer's appraiser also prepared an appraisal for an institution considering a loan to taxpayer. That appraisal was dated July 15, 2008, but had an effective date of July 2, 2008,

with respect to the "as-is market value" conclusions. This appraisal will be referred to as the July appraisal. The court finds that the "as-is market value" conclusions in the July appraisal were consistent with statements of real market value as defined in the Oregon statutes and related administrative rules. The court rejects the argument of taxpayer that the July appraisal should not be considered because the July appraisal was done for a different purpose.

Defendant-Intervenor Deschutes County Assessor (the county) defended its conclusions as to the real market value of the properties in question with a report of its expert witness. Interestingly, that witness adopted the underlying data and conclusions as to unimproved lot value contained in the July appraisal of taxpayer's appraiser, subject to two adjustments. With those two adjustments, one of which is an adjustment of the July 2008 concluded values to January 1, 2008, the July appraisal of taxpayer is consistent with the position of the county but inconsistent with the conclusions contained in the January appraisal of taxpayer.

## III.   ISSUE

The issue in this case is the proper real market value for the unimproved lots in the development as of January 1, 2008.

## IV.   ANALYSIS

The evidence presented by taxpayer is subject to two major criticisms by the county. First, the county points out that taxpayer's appraiser made no adjustment to sales data on what taxpayer asserted were comparable improved properties in order to adjust for the difference in market conditions as of the date of those sales and the assessment date of January 1, 2008. These package values are one component of determination of lot value as the lot value is determined, by both parties, by multiplying the value of a completed package by the lot cost ratio.

The second objection made by the county is that in determining lot cost ratio—based on the separate components of value for the lot and the improvement to the lot—taxpayer's appraiser made no adjustment to historic prices paid by a developer for a lot, even though the sale of the

package of lot and improvement occurred only after a passage of substantial time from the point when the bare lot was purchased.

The court agrees with the county that in these two areas the process followed by taxpayer's appraiser was fundamentally flawed. Taxpayer's appraiser considered sales data for improved lot sales that occurred at times significantly separated from the assessment date and yet made no attempt to adjust those sales to account for what all witnesses indicated was a time of significant price and value fluctuation—the period from 2006 to 2010. Especially given the fluctuating market that the evidence shows existed throughout the relevant period of time, the failure of taxpayer's expert witness to even attempt an adjustment causes the court to have little or no confidence in the report of that expert. That is particularly so given the importance that relevant authorities place on the need to make such adjustments. OAR 150-308.205(A)(2)(c); Appraisal Institute, *The Appraisal of Real Estate*, 333 (13th ed 2008).[1]

Secondly, the parties have different views of the lot/cost ratio that is appropriate to apply to conclusions of value for improved lots. Taxpayer suggests a ratio of 26 percent and the county suggests a ratio of 30 percent. However, in determining his 26 percent figure, the expert for taxpayer made no adjustment to account for appreciation in lot values in situations where, in an inflationary real estate market, lots had been purchased at periods significantly before the sale of completed improved lots.

In the opinion of the court, this approach is not justified and tends to understate the component of value for the unimproved lot in the package sold. The attempt by taxpayer's expert to explain why no adjustment was made to lot values or prices was simply not persuasive. The failure to adjust lot values, where evidence shows that lot value inflation was occurring, tends to attribute too much value to the improvement on the lot and not enough value to the lot.

In comparison with the appraisal of taxpayer, the county conducted an appraisal that was supported by

---

[1]  All references to the Oregon Administrative Rules (OAR) are to 2008.

evidence that was not effectively contradicted by taxpayer. In particular, the county presented evidence adequately supporting its trend conclusions, something it had failed to do in the Magistrate Division. Indeed, on rebuttal, the expert witness for taxpayer never testified that the report of the county was erroneous, although he suggested he would perhaps have reached different conclusions. Taxpayer's attempts to suggest that data used by the county, specifically Multiple Listing Service Data, were inappropriate were inconsistent with the use of similar data by taxpayer. Taxpayer criticized the use of post-assessment date information by the county but its expert considered such data himself. The court does not accept taxpayer's suggestion that its expert used such data only for confirmation of a conclusion rather than in forming a conclusion.

Finally, taxpayer's expert concluded January 1, 2008, values for many of the lots that were lower than the "as-is" conclusions of value for the same lots in the July appraisal. Given the agreement of all witnesses as to the strong downward trend in real estate values during 2008, that conclusion is another strong indicator that taxpayer's expert opinion is fundamentally flawed.

For all these reasons, taxpayer has failed to carry the burden of proving that, more probably than not, the values as asserted by the county are erroneous. Additionally, the court is of the opinion that the approach taken by the county results in a reasonable conclusion as to the value of the unimproved lots as of January 1, 2008.

The court finds that the lot values as of January 1, 2008, were as requested by the county.

## V.   CONCLUSION

Now, therefore,

IT IS THE OPINION OF THIS COURT that the lot values at issue in this matter as of January 1, 2008, were as requested by the county.